UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS LEE WILLIAMS,

                    Petitioner,                  **DECISION AND ORDER**

    -vs-                                 No. 02-CV-6496

STATE OF NEW YORK,

                    Respondent.

_____

## INTRODUCTION

Petitioner, Thomas Lee Williams ("Williams"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on two counts of third degree burglary and one count of petit larceny. The parties have consented to the disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

On July 18, 1994, Williams was arraigned on twelve counts of burglary, criminal trespass and related crimes. Following a jury trial held January 30, 1995, through February 3, 1995, Williams was found guilty on seven charges, the most serious of which was second degree burglary. He was acquitted on the remaining five counts. The prosecution filed an application to have the trial court adjudicate Williams as a persistent felony offender.

Monroe County Court Judge Donald Mark conducted a hearing at which the prosecution called four witnesses and elicited extensive testimony regarding Williams's felony history. Williams testified in his own behalf. At the conclusion of the hearing, Judge Mark reserved

decision and adjourned the matter to May 16, 1995.

On May 16, 1995, the parties appeared for sentencing at which time the prosecution withdrew its initial application and instead requested that the court adjudicate Williams as a persistent *violent* felony offender in accordance with New York Penal Law § 70.08. The district attorney explained that it would allow the trial court "more freedom to sentence [defendant] in a manner that the Court fe[lt] to be appropriate." In 1995, an anomaly in the New York state sentencing scheme provided a range of 8 years to life to 25 years to life for a persistent *violent* felony offender convicted of second degree burglary, in contrast to a range of 15 years to life to 25 years to life for a persistent felony offender convicted of the same charge. *See* 5/16/95 Transcript ("S.1") at 3.

Appearing before Judge Mark on May 18, 1995, Williams admitted to the allegations in the persistent violent felony offender information regarding two prior violent felonies to which he had no constitutional challenge. *See* 5/18/95 Transcript ("S.2") at 4-7. The court adjudicated him as a persistent violent felony offender "both as a result of the admissions made in court and as a result of the hearing which was conducted." S.2 at 8. Williams was sentenced as a persistent violent felony offender on the second degree burglary conviction to an indeterminate term of 10 years to life. S.2 at 15-16. Lesser concurrent sentences were imposed on the remaining convictions.

The Appellate Division, Fourth Department, reversed Williams's conviction on March 14, 1997, on the basis that an impermissible verdict sheet was submitted to the jury to assist in its deliberations. *People v. Williams*, 237 A.D.2d 982 (4th Dept. 1997). The prosecution subsequently offered Williams a plea bargain wherein he would plead guilty to the crime of

second degree burglary in return for a sentence promise of 8 years to life incarceration. Williams rejected this offer and opted to be re-tried. His second trial result in his acquittal of the crime of second degree burglary and his conviction on the lesser included offense of third degree burglary.

Because third degree burglary is not classified as a violent felony, Williams was not subject to sentencing as a persistent violent felony offender. When the prosecution applied to have him sentenced as a persistent felony offender, Williams objected, arguing that the state was bound by its election in 1995 to have Williams treated as a persistent violent felony offender, and that the court's decision to sentence him as such constituted the law of the case. The court rejected this argument and adjudicated Williams as a persistent felony offender pursuant to New York Penal Law § 70.10(1) based upon evidence adduced at the May 1995 hearing. *See* 1/15/98 Transcript ("S.3") at 24-25. The court determined, however, that the mandatory minimum sentence of 15 years to life for a persistent felony offender would be unconstitutionally vindictive as applied to Williams, because it would subject Williams to a more severe punishment for his conviction of a lesser offense following retrial.  *See North Carolina v. Pearce*, 395 U.S. 711 (1969). S.3 at 25-26. Instead, the court reduced the statutory minimum set forth in New York Penal Law § 70.10(2) from 15 years to 10 years and sentenced Williams to an indeterminate sentence of 10 years to life. S.3 at 33.

Williams appealed his second conviction, arguing that collateral estoppel prevented the court from adjudicating him as a persistent felony offender. He also argued that the trial court erred in imposing an illegal sentence of 10 years to life even though the court had adjudicated him as a persistent felony offender; that status requires a minimum sentence of 15 years to life. Williams acknowledged the trial court's efforts to avoid sentencing him vindictively, but argued

that the court abused its discretion in imposing an illegal sentence since the Appellate Division consistently has held that illegal sentences cannot stand. Williams hypothesized that the illegal sentence inevitably would be remitted for the imposition of the mandatory sentence, which would result in a longer sentence that was presumptively vindictive. Lastly, Williams argued that the court erred in granting the prosecution's request to dismiss a juror for cause on the ground that she equivocated regarding her ability to be impartial.

The Appellate Division, Fourth Department, unanimously affirmed Williams's conviction. It found that Williams failed to preserve for review his contention that the People were collaterally estopped from seeking to have him sentenced as a persistent felony offender but that, in any event, the claim was without merit. *People v. Williams*, 280 A.D.2d 913, 913 (4th Dept. 2001). The court "likewise reject[ed] defendant's contention that the sentence was vindictive" because the trial court "stressed that defendant's lengthy criminal record was the 'driving force behind its sentencing decision.'" *Id.* (quotations omitted). According to the court, there was "no reasonable likelihood that the sentence was the result of vindictiveness" in light of the record below. *Id.* (citations omitted). Finally, the court found that Williams's claim related to the allegedly biased juror lacked merit.

Through counsel, Williams sought leave to appeal to the New York Court of Appeals with regard to all of these issues. The Court of Appeals denied leave to appeal on July 2, 2001. *People v. Williams*, 96 N.Y.2d 909 (2001).

This habeas petition followed in which Williams raises the following grounds for relief: (1) the state court deprived him of his due process and equal protection rights when it illegally sentenced him as a persistent felony offender to 10 years to life, in violation of New York Penal

-4-

Law § 70.10(2) and New York Criminal Procedure Law § 400.20; (2) the state court was precluded by Double Jeopardy Clause and principles of collateral estoppel from adjudicating him as a persistent felony offender following his re-conviction; and (3) the intermediate state appellate court deprived him of his due process and equal protection rights when it refused to overturn the illegal sentence of 10 years to life imposed by the trial court. For the reasons set forth below, Williams's habeas petition is denied.

## DISCUSSION

### <u>Exhaustion</u>

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained.  *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)).  A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*); *accord*, *e.g.*, *Strogov v. Attorney General*, 191 F.3d 188, 191 (2d Cir. 1999).

Respondent asserts that Williams's Double Jeopardy sentencing claim is unexhausted, stating that Williams never mentioned the phrase "Double Jeopardy" on direct appeal when he presented his collateral estoppel claim. Williams argues that the Supreme Court has ruled that collateral estoppel is a "component" of the protections provided by the Double Jeopardy Clause, and that the doctrine of collateral estoppel is based upon the same principles as those underpinning the Double Jeopardy Clause. *See* Petitioner's Memorandum ("Pet'r. Mem.") at 17 (Docket #8). Williams also continues to argue on habeas review that the doctrine of collateral estoppel prevented the trial court from sentencing him as a persistent felony offender after he was reconvicted.[1]

First of all, I note that even a cursory reading of Williams's appellate brief reveals that counsel mentioned the phrase "Double Jeopardy" on several occasions in the context of his collateral estoppel argument. At the outset of his collateral estoppel argument, counsel cited *Ashe v. Swenson*, 397 U.S. 436 (1970), for the proposition that collateral estoppel "'means simply that

---

[1] The state court held that Williams failed to preserve for review his collateral estoppel claim. *People v. Williams*, 280 A.D.2d at 913 (citing N.Y. Crim. Proc. Law § 470.05(2)). The court held that "[i]n any event," the claim was "without merit." *Id.*  In the present case, there is a procedural bar since the intermediate appellate court "explicitly invoke[d] a state procedural bar rule as a separate basis for decision," *Harris v. Reed*, 489 U.S. 255, 264 (1989).  Respondent, however, does not argue that the state court's reliance on N.Y. Crim. Proc. Law § 470.05(2) constitutes an adequate and independent ground sufficient to preclude habeas review of these claims. Having failed to raise the affirmative defense of procedural default, respondent has waived it. Thus, there is no impediment to this Court's consideration of the claim on the merits. *See Larrea v. Bennett*, 2002 WL 1173546, at *12 n. 15  (S.D.N.Y. May 31, 2002) (citing *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) ("[S]tate-court procedural default . . .  is an affirmative defense, and [ ] the state is 'obligated to raise procedural default as a defense or lose the right to assert the defense thereafter.'") (quoting *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)).

when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit.'" Petitioner's Appellate Brief at 8-9 (quoting *Ashe*, 397 U.S. at 443). Counsel went on to assert that "collateral estoppel is not only a requirement of due process, but the doctrine is also part of the Fifth Amendment's guarantee against double jeopardy." *Id.* (citing *Ashe*, 397 U.S. at 443); *see also id.* (quoting *People v. Acevedo*, 69 N.Y.2d 478, 484 (1987) ("*Collateral estoppel may implicate constitutional double jeopardy considerations as, for example, where the People seek to relitigate issues resolved against them in a prior prosecution arising from the same offense.*") (citing *Ashe*, 397 U.S. at 445-46) (emphasis in petitioner's brief)).

Based upon a review of counsel's brief, it appears to this Court that Williams's claim, although contained within the section denominated as the collateral estoppel argument, implicated constitutional Double Jeopardy concerns. First of all, Williams cited to the Supreme Court decision which recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings. *See* Petitioner's Appellate Brief at 9 (citing *Ashe v. Swenson*, 397 U.S. at 443). Williams also cited several state court cases which relied upon Supreme Court authority for the proposition that collateral estoppel may implicate constitutional Double Jeopardy. *See* Petitioner's Appellate Brief at 9-10. Moreover, the focus of Williams's argument was that the prosecution was precluded from re-litigating in 1998 the issue of whether Williams should be adjudicated as a persistent felony offender after the court failed to determine in 1995 that Williams was a persistent felony offender. Such a claim implicates constitutional Double Jeopardy concerns. *See*, *e.g.*, *People v. Acevedo*, 69 N.Y.2d at 485, 487 (holding that collateral estoppel, as embodied in Double Jeopardy Clause, could be applied in criminal case to

bar prosecution from relitigating evidentiary, as well as ultimate, facts); *Pinkney v. Keane*, 920

F.2d 1090, 1097 (2d Cir. 1990) ("When the defendant invokes collateral estoppel in the usual

criminal case, the Government is seeking to relitigate an issue in a second prosecution that was

necessarily resolved in defendant's favor in an earlier proceeding. Under those circumstances,

relitigation is barred by the Fifth Amendment's guarantee against double jeopardy.") (citing *Ashe*

*v. Swenson*, 397 U.S. at 445 and *People v. Goodman*, 69 N.Y.2d 32, 37 (1986)), *cert. denied*, 501

U.S. 1217 (1991). Therefore, I conclude that Williams has exhausted his Double Jeopardy claim

and that it is properly before this Court on habeas review.[2]

Respondent also raises the defense of non-exhaustion with regard to claims that have not

even been raised on habeas review. In his petition, Williams notes that

> [he] is in preparation [*sic*] of submitting a 440. motion to the trial court in which
> he has no confidence in the court of origine [*sic*] correcting its own error.
> Therefore in order for the petitioner to comply with this honorable court statute
> petitioner now submitts [*sic*] its motion pursuant to 28 U.S.C. § 2254 respectively.

Petition at 6 (Docket #1). Respondent states that if "petitioner yet has matters to resolve in state

court, and has an avenue to pursue his claims therein, he has failed to exhaust state remedies[.]"

Respondent's Memorandum at 2 (Docket #5).  Williams does not indicate in his habeas the

nature of the claims he allegedly plans to submit on his collateral motion in state court. However,

---

[2] Even were the Court to agree with respondent that Williams' Double Jeopardy claim remains
unexhausted, it would exercise its discretion under 28 U.S.C. § 2254(b)(2) to deny the petition. *See* 28 U.S.C. §
2554(b)(2) ("An application for a writ of habeas corpus may be denied on merits, notwithstanding the failure of the
applicant to exhaust the remedies available in the courts of the State."). Although the Second Circuit has not yet
articulated a standard for determining when unexhausted claims should be denied on the merits, the majority of
district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims.
*See Naranjo v. Filion*, 2003 WL 1900867 at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases). A minority of courts
have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal
claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)."
*Id.* (quoting *Hernandez v. Lord*, 2000 WL 1010975 at *4-5 & n. 8 (S.D.N.Y. July 21, 2000) and citing cases).
Because Williams' Double Jeopardy claim does not pass muster under either standard, the Court would be able to
consider the instant habeas petition in its entirety.

there is no indication that he has raised any of these putative claims in his habeas petition.

Frankly, the Court is at a loss to understand why respondent has asserted the defense of non-

exhaustion with regard to claims as yet unraised on habeas review. Thus, respondent's argument

in this regard is denied as moot.

**Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal

review of his conviction must demonstrate that the state court's adjudication of his Federal

constitutional claim resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**Merits of the Petition**

**Claim I:  Petitioner's adjudication as a persistent felony offender violated the Double
Jeopardy Clause and collateral estoppel principles**

**A.     Double Jeopardy**

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States

through the Fourteenth Amendment, provides that "nor shall any person be subject for the same

offence to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. The Supreme Court

has explained that "the Clause serves the function of preventing both successive punishment and

successive prosecution, and that the Constitution was designed as much to prevent the criminal

from being twice punished for the same offence as from being twice tried for it." *Witte v. United

States*, 515 U.S. 389, 395 (1995) (internal quotations and citations omitted); *see also North*

*Carolina v. Pearce*, 395 U.S. at 717 (The Double Jeopardy guarantee "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.") (footnotes omitted).

It is "well established that there is no double jeopardy bar to the use of prior convictions in sentencing a persistent offender." *Caspari v. Bohlen*, 510 U.S. 383, 391 (1994) (citing *Spencer v. Texas*, 385 U.S. 554, 560 (1967); *Moore v. Missouri*, 159 U.S. 673, 678 (1895)). Historically, the Supreme Court has held Double Jeopardy protections to be inapplicable to sentencing proceedings "because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728 (1998) (citing *Bullington v. Missouri*, 451 U.S.430, 438 (1981); *Nichols v. United States*, 511 U.S. 738, 747 (1994) (noting that repeat-offender laws "'penaliz[e] only the last offense committed by the defendant'")).

To the extent that Williams argues that he could not be placed in jeopardy of being sentenced as a persistent felony offender in 1998 once the trial court failed to adjudicate him as a persistent felony after the 1995 hearing, Williams essentially is saying that the outcome of the first felony offender proceeding amounted to an acquittal that barred later enhanced sentencing. Citing *Bullington*, Williams contends that "Double Jeopardy attaches in a hearing on sentencing where the sentencing procedure was itself a trial on the punishment," and argues that the second sentencing proceeding in his case "meets all the requirement of a hearing on punishment[.]" Pet'r Mem. at 18 (Docket #8).

In *Bullington*, the defendant was convicted of capital murder and sentenced to life

imprisonment. After he obtained a reversal of his conviction on appeal and was re-convicted, the

prosecutor again sought the death penalty. The Supreme Court recognized the general principle

that "[t]he imposition of a particular sentence usually is not regarded as an 'acquittal' of any

more severe sentence that could have been imposed." *Bullington v. Missouri*, 451 U.S. at 438;

*accord*, *e.g.*, *Caspari v. Bohlen*, 510 U.S. at 392; *see also United States v. DiFrancesco*, 449 U.S.

117, 134 (1980) ("The pronouncement of sentence simply does not "have the qualities of

constitutional finality that attend an acquittal.").

    Nevertheless, the *Bullington* court held that because Missouri's "presentence hearing

resembled and, indeed, in all relevant respects was like the immediately preceding trial on the

issue of guilt or innocence,"[3] the first jury's refusal to impose the death penalty amounted to an

"acquittal" of that punishment. *Bullington*, 451 U.S. at 438; *accord Bohlen*, 510 U.S. at 392. In

*Monge*, however, the Supreme Court refused to extend *Bullington*'s rationale to the non-capital

sentencing context, concluding that it is confined to the "unique circumstances of capital

sentencing." Accordingly, the Supreme Court held, the Double Jeopardy Clause does not

preclude retrial on a prior conviction allegation when sentencing a defendant convicted of a non-

capital offense. *Monge*, 524 U.S. at 729. The Supreme Court explained in *Monge* that

> [s]entencing decisions favorable to the defendant, moreover, cannot generally be
> analogized to an acquittal . . . [W]here an appeals court overturns a conviction on
> the ground that the prosecution proffered insufficient evidence of guilt, that

---

[3] First, the "unbounded discretion" that normally applied to sentencing decisions was replaced by only two
alternatives under the Missouri scheme: death or life imprisonment without parole for 50 years. Second, the
Missouri statute provided specific substantive standards to guide the jury's choice of the appropriate punishment in
the form of various aggravating and mitigating circumstances. Last, the statute provided certain procedural
safeguards, the most significant of which was that the state had the burden of proving "beyond a reasonable doubt"
the existence of at least one aggravating circumstance not outweighed by mitigating circumstances. *See Bullington*,
451 U.S. at 438.

> finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a
> second trial. *See Burks v. United States*, 437 U.S. 1, 16, 98 S. Ct. 2141, 2150, 57
> L. Ed.2d 1 (1978). Where a similar failure of proof occurs in a sentencing
> proceeding, however, the analogy is inapt.

*Id.*  This is because the pronouncement of sentence simply does not "'have the qualities of

constitutional finality that attend an acquittal.'" *Id.* (quoting *United States v. DiFrancesco*, 449

U.S. at 134 and citing *Bullington*, 451 U.S. at 438).

 *Monge* makes clear that *Bullington*'s rationale has no place in the noncapital sentencing

arena. Thus, Williams' reliance upon *Bullington* is misplaced. Moreover, a defendant's

classification under the felony offender sentencing scheme is not a separate "offense."  *See*

*People v. Sailor*, 65 N.Y.2d 224, 233 (1985) ("'Classification as a persistent felony offender [or

second felony offender] is not a separate 'offense' and sentencing under the persistent felony

offender and second felony offender statutes' does not change the class of the underlying

conviction.") (quoting *Matter of Roballo v. Smith*, 63 N.Y.2d 485, 489, n. 3 (1984) and citing

N.Y. Penal Law §§ 70.06, 70.10)); *see also Caspari v. Bohlen*, 510 U.S. at 396

("Persistent-offender status is a fact objectively ascertainable on the basis of readily available

evidence. Either a defendant has the requisite number of prior convictions, or he does not.

Subjecting him to a second proceeding at which the State has the opportunity to show those

convictions is not unfair and will enhance the accuracy of the proceeding by ensuring that the

determination is made on the basis of competent evidence."). It is manifestly clear to this Court

that Williams was not in jeopardy of being punished twice for the same offense when he was

sentenced as a persistent felony offender following his reconviction. Williams' Double Jeopardy

claim accordingly is dismissed.

**B.     Collateral estoppel**

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. at 443; *accord, e.g.*, *Dowling v. United States*, 493 U.S. 342, 356 (1990). Collateral estoppel acquired constitutional dimension when the Supreme Court held in *Ashe* that the doctrine is embodied in the Fifth Amendment guarantee against Double Jeopardy and is applicable to the States through the Fourteenth Amendment. *Ashe*, 397 U.S. at 445-46. Collateral estoppel differs from Double Jeopardy in that constitutional jeopardy may attach long before the jury has rendered a verdict, whereas collateral estoppel applies only when there has been a final judgment. Moreover, constitutional Double Jeopardy usually relates only to subsequent prosecutions involving the same offense. *See Dowling*, 493 U.S. at 356 (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)). Collateral estoppel is broader in scope in that it prohibits the state from relitigating any ultimate facts resolved in the defendant's favor by the prior acquittal. *Id.* (citing *Ashe*, 397 U.S. at 445-446). In addition to being protected against retrial for the "same offense," the defendant thus is protected by the doctrine of collateral estoppel against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding. *Id.* (noting that *Ashe* "significantly expanded the protection to which a defendant is constitutionally entitled after an acquittal by holding that the Double Jeopardy Clause incorporates the doctrine of criminal collateral estoppel").

Williams argues that the fact that the trial court declined to adjudicate him a persistent felony offender in 1995 amounted a determination that he legally never could be deemed a

persistent felony offender. Collateral estoppel cannot preclude litigation of an issue unless a prior

final judgment on that issue has been rendered. *Clark v. Garvin,* 2000 WL 890272, at *4

(S.D.N.Y. June 30, 2000) (citing *Johnson v. Watkins*, 101 F.3d 792, 794-5 (2d Cir.1996); *People*

*v. Sailor*, 65 N.Y.2d 224, 228 (1985) (holding that collateral estoppel should not preclude the

prosecution from re-litigating defendant's prior felony convictions at a second felony offender

hearing because, *inter alia*, no final judgment had been rendered at the prior hearing)). Although

it is true that Williams was sentenced as a persistent violent felony offender in 1995, the

presiding judge made no final judgment on the issue of whether Williams could or should be

adjudicated a persistent felony offender. To the contrary, Williams's sentencing as a persistent

violent felony offender in 1995 was prompted by the prosecutor's request to the court to

substitute a persistent felony offender application in lieu of the first application. Absent a final

judgment on the relevant issue,  the prosecution could not be collaterally estopped from revisiting

Williams's prior felony convictions or his felony offender status at the 1998 sentencing

proceeding. *See*, *e.g.*, *Clark*, 2000 WL 890272, at *4 (although petitioner sentenced as first time

felony offender in 1992, court made no final judgment on issue of whether petitioner previously

had been convicted as a violent felon; state not collaterally estopped from re-litigating prior

felony convictions).

Moreover, compelling policy considerations disfavor Williams's collateral estoppel

claim.  In the civil context, courts readily apply the collateral estoppel doctrine in an endeavor to

ensure the integrity of the judicial system and provide finality to litigants. *Johnson v. Watkins*,

101 F.3d at 795 (citing *People v. Aguilera*, 82 N.Y.2d 23, 30 (1993)).  However, collateral

estoppel "is less liberally applied in criminal cases than in civil actions, because 'considerations

peculiar to the criminal process may outweigh the need to avoid repetitive litigation.'" *Pinkney v. Keane*, 920 F.2d at 1096 (citing *People v. Plevy*, 52 N.Y.2d 58, 64 (1980)). Given that issues of public safety and the rights of individual defendants are at stake in criminal matters, concern with reaching the correct result inevitably must outweigh the efficiency concerns that might otherwise favor application of the collateral estoppel doctrine. *See Standefer v. United States*, 447 U.S. 10, 25 (1980).

Furthermore, Williams's collateral estoppel argument does not really fit the facts of the present case. Generally, a defendant would urge the invocation of collateral estoppel if the prosecution sought to introduce new evidence of prior felony convictions at a subsequent sentencing proceeding. This is not such a case, however. Here, the court relied in 1998 upon the same felony convictions that were either admitted by Williams or established through proof at the earlier hearing. Contrary to Williams's apparent contention, there is no limit on the number of times that the state may use a defendant's prior convictions as predicate felonies for purposes of New York's enhanced sentencing scheme, provided that they are sufficiently established. In light of these circumstances, and the compelling interest in protecting society from persistent felony offenders, the application of the collateral estoppel doctrine against the prosecution is not appropriate here.

**Claim II:   Petitioner's sentence was illegal**

At Williams's 1995 sentencing hearing, the court adjudicated him as a persistent violent felony offender and sentenced him to an indeterminate term of 10 years to life on his second degree burglary conviction, a violent felony. This conviction was overturned on appeal; following Williams's retrial, he was convicted of third degree burglary. Because third degree

burglary is not a violent felony, Williams was not subject to persistent violent felony offender status when he was sentenced on that charge in 1998. Based on the evidence presented at the 1995 sentencing hearing and at trial, the trial court in 1998 adjudicated Williams as a persistent felony offender and sentenced him to an indeterminate term of imprisonment of 10 years to life. Williams claims that the trial court's sentence was "illegal." He also claims that, on appeal, the state court improperly allowed his "illegal" sentence to stand. Because these two claims are related, the Court considers them together.

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus." ). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, Williams cannot demonstrate that the state court abused its discretion in sentencing. At the 1998 sentencing hearing, the trial court noted that Williams had been arrested 25 times; thirteen of those arrests occurred in New York state. Williams also had been convicted of five felonies in New York and two felonies out-of-state. Thus, there was ample evidence presented to the trial court on which it could determine that Williams had the requisite number of predicate

-16-

felonies to justify persistent felony offender status.[4]

New York's Penal Law provides that once the trial court determines that a defendant is a persistent felony offender and "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest," the court "may impose the sentence of imprisonment" may impose the sentence authorized for a class A-I felony. N.Y. PENAL LAW § 70.10(2). In this case, the Penal Law authorized an indeterminate sentence range of 15 to 25 years as the minimum and life imprisonment as the maximum. However, Williams previously had been sentenced in 1995 to a term of 10 years to life on the charge of second degree burglary that ultimately was vacated. As noted above, Williams was retried on the same charges, which resulted in his conviction of the lesser charge of third degree burglary. In order to avoid any presumption of vindictiveness, *see North Carolina v. Pearce*, *supra*, the trial court decided that it could not set his minimum term of imprisonment at greater than 10 years. I note that the "illegal" sentence about which Williams complains is in fact five years *less* than the statutory minimum authorized under the circumstances.

Williams contends that when the trial court did not impose the class A-I felony sentence of 15 to 25 years to life imprisonment, the court "was required to impose the sentence for second felony offender status" because the court was "aware that a 10 years minimum sentence were [*sic*] an illegal sentence for a presistent [*sic*] felony offender status." Williams cites *People v.*

---

[4]  According to Section 70.10(1) of the Penal Law, a "persistent felony offender is a person . . . who stands convicted of a felony after having previously been convicted of two or more felonies[.]" N.Y. Penal Law § 70.10(1)(a). For purposes of this section, a "previous felony conviction" is a conviction of a felony in New York, or of a crime in any other jurisdiction, provided that a sentence in excess of one year was imposed therefore; the defendant was imprisoned for such conviction prior to the commission of the present felony; and the defendant was not pardoned on the ground of innocence. *See* N.Y. PENAL LAW § 70.10(1)(b)(i) - (iii).

*Yale*, 49 A.D.2d 167 (4th Dept. 1975), for the proposition that "a judge electing not to impose the sentence authorized for a presistent [*sic*] felony offender *must* impose the sentence authorized for a second felony offender." Pet'r Mem. at 29 (Docket #8) (emphasis in original).

*People v. Yale* does not stand for the result urged by Williams. In that case, the state court explained that "where the person to be sentenced has been convicted of a B, C, D or E felony and is both a persistent felony offender as defined in 70.10 and a second felony offender as defined in 70.06, the sentencing court has but two sentences available: (1) a lifetime sentence, where the court is of the opinion that extended incarceration and lifetime supervision will best serve the public interest, may be imposed as authorized by section 70.00 as for a Class A-I felony; or (2) a sentence under 70.06." *People v. Yale*, 49 A.D.2d at 170. The holding of that case makes clear that the trial court here acted within the boundaries of state law in that it *did* impose a lifetime sentence after finding that Williams's lengthy criminal history warranted it. I recognize that Williams would have preferred to have been sentenced as a second felony offender, since this status carries a lesser sentencing range. However, Williams is not constitutionally entitled to such a result. Having failed to show any error of state statutory law, let alone any violation of federal constitutional law, Williams cannot obtain habeas relief on his claim that the trial court imposed an "illegal" sentence. Because the trial court did not abuse its discretion in sentencing, Williams's claim that the appellate court erred in not overturning his allegedly "illegal" sentence likewise must be dismissed.

## CONCLUSION

For the reasons stated above, Thomas Williams's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Williams has

failed to make a substantial showing of a denial of a constitutional right, I decline to issue a

certificate of appealability. See 28 U.S.C. § 2253.

**IT IS SO ORDERED**

*/s/ Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      April 26, 2005
            Rochester, New York.